Eufemia Morales Vda. de Cortés, demandante y peticionaria, *v.* Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, demandada y recurrida.

*Número:* CE-86-669      *Resuelto:* 18 de abril de 1989

590

*Gabriel García Moya,* de *Servicios Legales de Puerto Rico, Inc.,* abogado de la peticionaria; *Rafael Ortiz Carrión, Procurador General,* y *Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogados de la recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Este recurso nos brinda la oportunidad de interpretar, en relación con el cónyuge supérstite de un pensionado, la extensión de la exclusión contenida en el Art. 1 de la Ley Núm. 105 de 28 de junio de 1969 (3 L.P.R.A. sec. 788a(a)), según la cual "[s]i el participante retirado, al momento de fallecer estuviese cubierto por el Título II de la Ley Federal de Seguridad Social, [el cónyuge supérstite no tendrá] derecho a la pensión [del Sistema de Retiro del Gobierno de Puerto Rico]".

# I

El 23 de mayo de 1979 falleció el Sr. Manuel Cortés Medina, sobreviviéndole su viuda, la Sra. Eufemia Morales Cortés, y una hija menor de edad. En vida de Don Manuel, todos dependían económicamente de la pensión de retiro que éste recibía. Al momento de fallecer tenía cincuenta y cinco (55) años de edad y era pensionado del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades (en adelante Sistema de Retiro). Desde ese momento, cesaron los pagos de la pensión del Sistema de Retiro y su viuda e hija comenzaron a recibir solamente los beneficios del Seguro Social federal.

En enero de 1983, al cumplir la hija dieciocho (18) años de edad, el Seguro Social federal suspendió los pagos. Doña Eufemia no cualificaba para recibir los beneficios de Seguro Social como viuda, ya que sólo contaba con cuarenta y seis (46) años de edad. Al no contar con medios económicos para vivir, solicitó ante el Sistema de Retiro una pensión a tenor con la Ley Núm. 105, *supra*. La pensión le fue denegada al interpretar el Sistema de Retiro que "al momento de fallecer el pensionado [Don Manuel Cortés Medina], éste estaba cubierto por el Seguro Social Federal" y que el Art. 1 de la Ley Núm. 105, *supra*, excluye de su cubierta al cónyuge supérstite de un pensionado que al fallecer "estuviese cubierto por el Título II de la Ley Federal de Seguridad Social". Apéndice IV, pág. 16. La peticionaria solicitó revisión al Tribunal Superior, Sala de Aguadilla,[1] y éste confirmó la decisión administrativa. Inconforme, Doña Eufemia solicitó revisión. Imputó la comisión de dos (2) errores: (1) que el tribunal erró al interpretar y al aplicar a los hechos de este caso la limitación estatutaria contenida en la Ley Núm. 105, *supra*, y (2) que

---

[1] En reconsideración, el Sistema de Retiro se reafirmó en su decisión. Doña Eufemia recurrió entonces a la Junta de Síndicos, que también confirmó la decisión.

erró al utilizar o al aplicar el análisis constitucional en relación con la Ley Núm. 4 de 7 de abril de 1985 (3 L.P.R.A. sec. 788a).[2]

Decidimos revisar y expedimos el auto.

## II

El Art. 1 de la Ley Núm. 105, *supra*, dispone lo siguiente:

Al fallecer un participante del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades y/o del Sistema de Retiro de la Judicatura de Puerto Rico mientras estuviere recibiendo una anualidad por retiro o por incapacidad de dicho Sistema, el cónyuge supérstite e hijos menores o física y/o mentalmente incapacitados tendrán derecho a una pensión que se determinará de acuerdo a lo dispuesto en esta sección.

Si el participante retirado, al momento de fallecer estuviese cubierto por el Título II de la Ley Federal de Seguridad Social, las personas antes mencionadas no tendrán derecho a la pensión que por esta sección se concede.

Ya en *García Martínez v. Gobernador*, 109 D.P.R. 294, 299–300 (1979), nos expresamos sobre el propósito de la Ley Núm. 105, *supra*:

El propósito de la ley es *proveer una asistencia económica al cónyuge supérstite e hijos del participante que con mayor probabilidad dependían del ingreso económico de éste para subsistir.* Es de importancia cardinal tener presente que el Sistema de Retiro de los Empleados del Gobierno ofrece un beneficio similar a sus participantes mediante su coordinación con la Ley Federal de Seguridad Social, razón por la cual fue necesario y lógico limitar la pensión concedida por la Ley Núm. 105 *a aquellos casos donde las personas beneficiadas no tuvieran la protección concedida por el Sistema de Retiro a través de la Ley Federal de Seguridad Social.*

---

[2] Debido al resultado a que llegamos, no es necesario que discutamos este señalamiento de error.

La Ley Núm. 105, en su perspectiva original, es una ley suplementaria: si el participante no lograba la condición de asegurado bajo la Ley Federal de Seguridad Social, principal beneficio provisto por el Sistema de Retiro de los Empleados del Gobierno, entonces recibía la pensión concedida por la Ley. *De esta manera todos los participantes de dicho sistema recibían del sistema una asistencia económica para su cónyuge e hijos en las circunstancias descritas.* (Énfasis suplido.)

■ Según la Ley Núm. 105, *supra*, el cónyuge supérstite e hijos menores del participante del Sistema de Retiro tienen derecho a recibir asistencia económica, siempre y cuando el *participante* retirado, al momento de fallecer, *no* estuviese cubierto por el Título II de la Ley Federal de Seguridad Social. El cónyuge supérstite recibirá la pensión mientras permanezca en estado de viudez. Art. 4 de la Ley Núm. 105, *supra*, 3 L.P.R.A. sec. 788a(d).

En abril de 1985 la Ley Núm. 105, *supra*, fue enmendada por la Ley Núm. 4, *supra*, para otorgar al cónyuge supérstite e hijos menores del participante una anualidad igual al sesenta por ciento (60%) de la pensión que aquél recibía al momento de su muerte, aun cuando el pensionado hubiese estado disfrutando de los beneficios del Seguro Social federal. En su Exposición de Motivos, la Ley Núm. 4, *supra*, señala, con relación a la Ley Núm. 105, *supra*, lo siguiente:

La Ley Núm. 105 de 28 de junio de 1969, según enmendada, ordena un sistema mediante el cual al fallecer un participante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado y sus Instrumentalidades, mientras estuviere recibiendo una anualidad por retiro o por incapacidad, el cónyuge supérstite e hijos menores o física o mentalmente incapacitados tendrán derecho a una pensión que se determina de acuerdo a las disposiciones de la propia ley. Esta es una sabia medida, ya que protege a la familia después de la muerte del participante pensionado.

Sin embargo, el segundo párrafo del artículo primero de esta Ley 105 de 28 de junio de 1969, según enmendada, dispone que si al momento del fallecimiento el participante estuviera cubierto por el Título II de la Ley Federal de Seguridad Social, entonces se privaría al cónyuge supérstite y a los hijos, de la pensión que por Ley se les concede. *Tal disposición es injusta y discriminatoria ya que reduce sustancialmente el sustento de las familias del asegurado y los coloca en una situación precaria para subsistir.*

Mediante la aprobación de esta medida se le concede una pensión al cónyuge supérstite e hijos menores o física o mentalmente incapacitados del participante del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico que al fallecer hubiere estado cubierto por la Ley Federal de Seguridad Social. (Énfasis suplido.) 1985 Leyes de Puerto Rico 21.

El Informe de la Comisión de Gobierno Estatal del Senado señaló lo siguiente en relación con la exclusión del Art. 1 de la Ley Núm. 105, *supra:*

*Esta restricción legal tiene el efecto de reducir la capacidad económica e ingresos de los miembros de la familia que dependían de él. Entendemos que tal limitación o condición obedece al hecho de que en tales casos los dependientes del pensionado fallecido quedan protegidos, en cierta medida, por los beneficios del Seguro Social.* Sin embargo, no podemos perder de perspectiva que el continuo aumento en los costos de los bienes y servicios necesarios para una subsistencia adecuada y decorosa no pueden enfrentarse con la ayuda de un sólo programa de bienestar social. (Énfasis suplido.)

La preocupación del legislador por atender la situación económica de los pensionados del Sistema de Retiro se evidencia en la aprobación de la Ley Núm. 39 de 3 de junio de 1988 (3 L.P.R.A. sec. 829n.), la cual permite a todo pensionado acogido al plan de coordinación el poderse acoger al plan de completa suplementación. En su Exposición de Motivos, se señala lo siguiente:

Consciente de la difícil situación económica que afecta a cerca de treinta mil (30,000) de nuestros pensionados que no

disfrutan de la completa suplementación con el Seguro Social, situación que en parte fue provocada por falta de orientación, mediante esta ley se ofrece una última oportunidad a nuestros pensionados afectados de acogerse a la completa suplementación previo el pago de las sumas necesarias para completar sus aportaciones a base del siete (7) por ciento de la retribución que recibieron por servicios acreditables posteriores al primero de julio de 1968.

Se confía que con la aprobación de esta medida muchos de nuestros pensionados se acogerán a la completa suplementación para *aliviar su precaria situación económica.* (Énfasis nuestro.) 1988 Leyes de Puerto Rico 163.

Reiteradamente hemos señalado que las disposiciones estatutarias con propósitos remediales deben ser interpretadas liberalmente. *Sánchez v. A.S.R.E.G.J.*, 116 D.P.R. 372, 378 (1985). Específicamente y en relación con las pensiones, "[l]a jurisprudencia sostiene de manera uniforme que las leyes que crean el derecho a disfrutar de una pensión deben ser interpretadas liberalmente, a fin de que se cumpla el propósito del legislador; y que la fuerza y efecto de dichas leyes no deben conformarse estrictamente a los términos literales del estatuto." *Acuña v. Junta de Retiro*, 58 D.P.R. 94, 100 (1941).

Las leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira. No debemos desvincularlas del problema humano cuya solución persiguen. *Figueroa v. Díaz*, 75 D.P.R. 163, 171 (1953), opinión del entonces Juez Asociado Señor Negrón Fernández, con la cual concurre el Juez Asociado Señor Belaval. En su interpretación, debe ser preeminente la realidad humana de la vida, no la abstracción dogmática de reglas eternas e inmutables. *Figueroa v. Díaz*, supra, pág. 175.

Nuestro Código Civil, en su Art. 18 (31 L.P.R.A. sec. 18), establece el principio de *in pari materia*, por el cual las leyes que se refieran a la misma materia o cuyo objetivo

sea el mismo deben ser interpretadas refiriéndose las una a las otras, para cuando lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro. *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *United Hotels of P.R. v. Willig*, 89 D.P.R. 188, 195 (1963). Tanto el historial legislativo y social de la ley como los estatutos posteriores *in pari materia* pueden utilizarse en ayuda de su interpretación a los fines de lograr el propósito legislativo. *Figueroa v. Díaz*, supra, pág. 185, opinión concurrente del Juez Asociado Señor Ortiz, con la cual concurre el Juez Presidente Señor Snyder. Debemos tener presente que la ley es "parte de un todo coherente y armónico —el ordenamiento jurídico— dentro del cual desempeña una función coordinada o subordinada, según los casos, a la de otras normas jurídicas". G. García Valdecasas, *Parte general del derecho civil español*, Madrid, Ed. Civitas, 1983, pág. 111. La ley se debe ver "como producto de las condiciones sociales y la necesidad de relacionar la norma con aquellas otras que integran una institución jurídica, y cada institución con las demás, hasta llegar a los principios fundamentales del sistema jurídico total". *Rocafort v. Álvarez*, 112 D.P.R. 563, 572 (1982).

■ Examinemos la situación de autos a la luz del esquema estatutario del Sistema de Retiro y analizando la Ley Núm. 105, *supra*, como una ley de propósitos remediales, la cual debe ser interpretada liberalmente. Acudimos tanto a la propia Ley Núm. 105, *supra*, como a lo señalado en torno a ella en el historial legislativo de la Ley Núm. 4, *supra*.(3) La

---

(3) "[U]na expresión contenida en una ley enmendatoria explicando cuál fue la intención legislativa al aprobar la ley objeto de enmienda no es definitiva con carácter retroactivo ni desvirtúa la interpretación que a la ley original haya dado este Tribunal.

"Esto no impide, sin embargo, que una legislación posterior sea considerada para interpretar propiamente el alcance de la legislación anterior." (Citas omi-

parte recurrida plantea que Doña Eufemia no es acreedora a una pensión del Sistema de Retiro por haber estado "cubiertos" ella y su causante por el Seguro Social federal.[4] No le asiste la razón. Veamos. Don Manuel, al *momento de fallecer*, era pensionado del Sistema de Retiro y recibía los beneficios de dicho sistema. No recibía los beneficios del Seguro Social. Según estas circunstancias, no puede afirmarse que estaba "cubierto" por la ley federal a los fines de excluir a su cónyuge supérstite e hijos menores de la pensión del Sistema de Retiro al amparo de la Ley Núm. 105, *supra*. En el caso de autos es a partir de la muerte del pensionado que su viuda e hija comienzan a recibir los beneficios del Seguro Social.

Según expresáramos en *García Martínez v. Gobernador*, supra, pág. 299, "la Ley Núm. 105, *supra*, es una protección suplementaria para cubrir aquellos casos en que la protección principal, la Ley Federal de Seguridad Social, no ampara a las [personas beneficiadas]". En el caso de autos, la viuda, Doña Eufemia, era una de las personas beneficiadas por la Ley Núm. 105, *supra*, que luego de haber llegado su hija a los dieciocho (18) años cesó de recibir beneficios de la ley federal. Por lo tanto, interpretando la Ley Núm. 105, *supra*, en su justa perspectiva concluimos que el cónyuge supérstite de un pensionado que al fallecer no estaba recibiendo los beneficios del Seguro Social federal no cae bajo la exclusión del Art. 1 de la Ley Núm. 105, *supra*. Al amparo de las disposiciones del Art. 4 de esta ley, *supra*, dicho cónyuge tiene derecho a recibir la pensión que provee la ley mientras permanezca en estado de viudez. Sin embargo, si el cónyuge supérstite, al morir el pensionado, comienza a recibir los beneficios del Seguro Social federal y luego éstos cesan, encontrándose dicho cónyuge aún en estado de viudez, tiene dere-

---

tidas.) R.E. Bernier, *Aprobación e interpretación de las leyes en Puerto Rico*, México, Ed. Cultura, 1963, pág. 123.

[4] Alegato de la parte peticionaria, pág. 5.

cho desde el momento en que deja de recibir los beneficios de la ley federal a recibir la pensión correspondiente bajo las disposiciones de la Ley Núm. 105, *supra*. Esta es la situación de Doña Eufemia. Decidir lo contrario desvirtuaría el propósito de la ley y dejaría a la viuda de un pensionado fallecido en una situación económica precaria.

Según la interpretación esbozada por la recurrida, Doña Eufemia quedaría totalmente desamparada, sin la protección de la ley federal y sin la protección de la Ley Núm. 105, *supra*. Tal resultado es insostenible a la luz del esquema de protección social creado al amparo de la Ley Núm. 105, *supra*. Este tipo de situación es lo que precisamente se intentó evitar.

De ninguna manera podríamos interpretar que el legislador intentó crear una exclusión permanente, de tal forma que las familias de pensionados con hijos menores, en virtud de los cuales obtuvieran un derecho limitado a pensión de Seguro Social federal, quedaran desamparadas totalmente al suspenderse este beneficio por alcanzar los menores los dieciocho (18) años de edad. Sin duda alguna, tal interpretación provocaría que el cónyuge supérstite quede en una posición muy frágil y de total indefensión. Premio muy poco consolador para quien, después de todo, aportó —a través de la Sociedad Legal de Gananciales— la mitad de la totalidad de las aportaciones que el causante hiciera al Sistema de Retiro.

Por todo lo antes expresado, *se dictará sentencia que revoque la dictada por el Tribunal Superior, Sala de Aguadilla, el 9 de septiembre de 1986, y se devolverá el caso al tribunal de instancia para ulteriores procedimientos compatibles con esta opinión.*