Gilberto Gierbolini, Juez Ponente
*683 TEXTO COMPLETO DE LA SENTENCIA
El 6 de diciembre de 2000, María C. Nazario Peña (en adelante Nazario), presentó la Solicitud de Revisión. Administrativa de epígrafe y nos solicitó la revocación de la Resolución emitida el 1 de agosto de 2000, notificada el 3 de octubre de 2000, por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante Junta de Síndicos). Mediante dicha resolución, la Junta de Síndicos denegó la pensión por incapacidad ocupacional y no ocupacional presentada por Nazario.
Por los fundamentos que expondremos, EXPEDIMOS el Recurso de Revisión Administrativa solicitado, EXPEDIMOS el Auto y CONFIRMAMOS la Resolución recurrida.
I
Nazario trabajaba como cocinera para el Departamento de Educación por espacio de 18 años, acreditados al Sistema de Retiro. El 10 de febrero de 1995, Nazario solicitó a la Administración de los Sistemas de Retiro (en adelante la Administración), los beneficios de una pensión por incapacidad ocupacional o no ocupacional, de acuerdo con la Ley Número 447 del 15 de mayo de 1951, según enmendada (3 L.P.R.A. Secciones 761 y siguientes). En dicha solicitud, Nazario alegó que sufrió varios accidentes en ocasión de su empleo. Nazario indicó que estaba incapacitada para trabajar, por razón de que tiene los nervios pillados, los brazos sin fuerza y espasmos musculares. Nazario informó, además, que era atendida por médicos del Fondo del Seguro del Estado (en adelante FSE), agencia que atendía su reclamación sobre accidentes del trabajo y que también era atendida por un médico privado. Personal de la Oficina de Determinación de Incapacidad solicitó a Nazario que enviara los documentos correspondientes que evidenciaran el tratamiento privado. Dicha oficina notificó, además, que debía asistir a una cita con el Dr. Vicente R. Sánchez Quiles, fisiatra y especialista en medicina intema, a los fines de una evaluación. El doctor Sánchez efectuó la evaluación y rindió un informe con la siguiente impresión diagnóstica: "Diagnostic Assessment: 1. Bilateral Carpal Tunnel Syndrome, Status post Right Operation. 2. Obesity. 3. Trapezius muscle spactic myalgia. 4. High blood pressure. 5. Onychomycosis." Véase, páginas 3-6, según apéndice del Alegato del Estado Libre Asociado de Puerto Rico.
El 23 de febrero de 1996, la Oficina de Determinación de Incapacidad denegó la solicitud presentada por Nazario al determinar que ella estaba física y mentalmente capacitada para cumplir con las funciones de su cargo. El 23 de marzo de 1996, Nazario solicitó reconsideración de esta determinación, por entender que tenía una incapacidad total y permanente. El 5 de julio de 1996, el Dr. José R. Cuebas, asesor médico de la Oficina de Reconsideraciones, efectuó la revisión del expediente médico. El doctor Cuebas concluyó que era menester efectuar una evaluación neurológica independiente para aclarar el grado de debilidad de Nazario. A base de dicha observación, el expediente fue devuelto a la Oficina de Determinación de Incapacidad. A su vez, Nazario fue notificada de una cita con la Dra. Evelyn Rodríguez, neuróloga. Dicha doctora evaluó a Nazario y rindió un informe, el cual indica en su segunda página: "Fuerza: 3) en todos los movimientos de la mano izquierda recién operada y 4 en el resto del cuerpo." La doctora recomendó que la paciente debía ser evaluada dentro de unos meses para comparar la recuperación de la evaluación. Véase, páginas 16-17, según el apéndice del Alegato del Estado Libre Asociado de Puerto Rico. El 2 de octubre de 1996, la Oficina de Reconsideraciones reafirmó dicha denegatoria.
El 14 de noviembre de 1996, Nazario apeló ante la Jurtta de Síndicos. El Dr. Orlando Díaz, médico generalista asesor, revisó el expediente y evaluó la prueba médica y concluyó que Nazario no cualificaba para una pensión por incapacidad ocupacional o no ocupacional. El 30 de septiembre de 1997, la Junta de Síndicos de ASR, mediante resolución, ordenó devolver el caso a la Administración para su reevaluación, debido a que Nazario alegó que la evidencia médica relacionada a su condición mental no había sido tomada en consideración, a pesar de que estaba en el expediente. Véase, páginas 25-26 y 34 del apéndice según Solicitud de revisión. Una vez devuelto el expediente a la Oficina de Determinación de Incapacidad, el mismo fue evaluado por el Dr. A. Hurtado de Mendoza, siquiatra, quien determinó que la condición mental de Nazario no era severa e incapacitante y recomendó denegar la pensión por incapacidad ocupacional. También, la Dra. *684 Evelyn Rodríguez efectuó una segunda evaluación neurológica de Nazario y concluyó que ella: "Hizo movimientos rápidos, alternantes, repetitivos con las cuatro extremidades. Puede cargar, halar, empujar, agarrar objetos de mediano peso. Hizo pinzas puño, oposición. Puede viajar, estar en alturas, guiar, inclinarse. Entiende y recuerda instrucciones. Pudo golpear con la punta de los dedos. Sostener una pluma y escribir. Agarrar una moneda. Abrir y cerrar una pluma, manejar sus medicinas normalmente." El Dr. Rafael Luzardo Mejías, asesor médico, determinó que Nazario no cualificaba para una pensión por incapacidad no ocupacional. Véase, páginas 19-25, según apéndice del Alegato del Estado Libre Asociado de Puerto Rico.
El 2 de diciembre de 1998, la Oficina de Determinación de Incapacidad denegó nuevamente la solicitud de pensión. El 22 de diciembre de 1998, Nazario solicitó reconsideración. El Dr. Manuel Colón Vargas, siquiatra, revisó en dos ocasiones distintas el expediente y determinó en sendos informes que la condición siquiátrica y neurológica de Nazario no era severa y no llenaba los criterios médicos de incapacidad. Véase, páginas 133-134, según apéndice de la Solicitud de revisión. El Dr. José R. Cuebas también revisó el expediente y en su informe concluyó que Nazario no llenaba los criterios de severidad requeridas. Véase, páginas 26-27, según apéndice del Alegato del Estado Libre Asociado de Puerto Rico. La reconsideración fue denegada el 28 de junio de 1999. De dicha denegatoria, el 12 de julio de 1999, Nazario apeló ante la Junta de Síndicos. Nazario alegó que la prueba médica revelaba que ella era acreedora a la pensión por incapacidad ocupacional o por incapacidad no ocupacional. La Administración alegó que Nazario no era acreedora a dicha pensión por no estar incapacitada.
La vista administrativa fue celebrada el 10 de abril de 2000. La única testigo que declaró fue Nazario. No declararon peritos. También fue sometida la siguiente evidencia médica: (1) certificado del Dr. Angel Luis Rodríguez, siquiatra, con fecha de 6 de marzo de 2000, que indica que éste atiende siquiátricamente a la señora Nazario desde el 23 de enero de 1995, (2) certificación del 31 de enero de 2000 del Dr. Roberto Vera, generalista. En dicho certificado, el doctor Vera enumera las condiciones que padece Nazario y concluye que ella está totalmente incapacitada para trabajar, (3) certificación del FSE del 23 de agosto de 1999 en la cual se describe el accidente del trabajo, la lesión relacionada y compensada, su status y la incapacidad resultante en las funciones fisiológicas generales de las muñecas de las manos.
El 1 de agosto de 2000, notificada el 3 de agosto de 2000, la Junta de Síndicos emitió resolución en la cual denegó la pensión por incapacidad ocupacional o no ocupacional solicitada. El 23 de octubre de 2000, Nazario presentó moción de reconsideración ante la Junta de Síndicos. Nazario alegó que no fueron consideradas las evaluaciones siquiátricas del Dr. Angel L. Rodríguez del 23 de enero de 1997 y 28 de marzo de 1998. Además, alegó que el médico asesor de la Administración, el Dr. Manuel Colón Vargas, efectuó señalamientos infundados en su informe de revisión médica del 30 de enero de 1999, los cuales contradicen los del doctor Rodríguez y que el doctor Colón Vargas no examinó siquiátricamente a la señora Nazario. Finalmente, sostuvo que estaba incapacitada para trabajar al servicio del gobierno y solicitó la pensión por incapacidad.
Oportunamente, transcurrido el término de 15 días dispuesto por ley sin que la Junta de Síndicos hiciera una determinación con relación a la moción de reconsideración, el 6 de diciembre de 2000, Nazario compareció ante nos mediante solicitud de revisión administrativa y nos solicitó la revocación de la resolución emitida por la Junta de Síndicos. Nazario alegó que erró la Junta de Síndicos al aplicar la ley y el reglamento a los hechos de este caso y al concluir que ella no está incapacitada sin considerar la totalidad de la evidencia médica en el expediente, específicamente la evidencia relacionada a su condición emocional.
El 17 de enero de 2001, emitimos resolución interlocutoria y concedimos a la recurrida un término de 30 días para presentar su alegato respecto a los méritos del recurso. El 16 de febrero de 2001, la recurrida solicitó prórroga por un término adicional de 15 días. El 8 de marzo de 2001, la recurrida presentó su alegato.
II
En su función revisora, los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones *685 administrativas de los foros especializados porque las conclusiones y determinaciones de los organismos administrativos merecen gran consideración y respeto por los tribunales en la etapa de revisión judicial. Rivera Concepción v. Administración de Reglamentos y Permisos, 2000 J.T.S. 155, página 160; Associates Insurance Agencies Inc. v. Comisionado de Seguros, 97 J.T.S. 142, página 332; Misión Industrial v. Junta de Planificación, 91 J.T.S. 34, página 728; Metropolitana, S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Viajes Gallardo v. Clavell, 131 D.P.R. 275, 289-290 (1992); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
La revisión judicial es limitada. Sólo determina si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 99 J.T.S. 152, página 125; T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., 99 J.T.S. 60, página 884; Comité de Vecinos Pro-Mejoramiento Inc. v. Junta de Planificación, 99 J.T.S. 32, página 732; Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993). A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal, Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. Sección 2175; Municipio de San Juan v. Junta de Calidad Ambiental, 2000 J.T.S. 193, página 474; Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, 2000 J.T.S. 21, páginas 560-561; Domínguez Talavera v. Caguas Expressway Motors, Inc., 99 J.T.S. 85, páginas 1067-1068; T-JAC Inc. v. Caguas Centrum Limited Partnership, supra, página 884; García Oyóla v. Junta de Calidad Ambiental, 91 J.T.S. 25, página 662; Fac. C. Soc. Aplicadas, Inc. v. C.E.S, 133 D.P.R. 521, 532-533 (1993).
El propósito de la regla de evidencia sustancial, aplicable a las determinaciones de hechos de las agencias administrativas, es "evitar la sustitución del organismo administrativo en materia especializada por el criterio del tribunal revisor." Reyes Salcedo v. Policía de Puerto Rico, 91 J.T.S. 58, página 959; López v. Junta de Planificación, 80 D.P.R. 646, 673 (1958). Nuestro Tribunal Supremo ha definido la evidencia sustancial como que “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, supra, página 561; Ramírez Rivera v. Departamento de Salud, 99 J.T.S. 47, página 817; Misión Industrial v. Junta de Planificación, 98 J.T.S. 79, página 1160; Hilton Hotels v. Junta de Salario Mínimo, 14 D. P.R. 670, 687 (1953).
Por consiguiente, para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hechos no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración. Municipio de San Juan v. Junta de Calidad Ambiental, supra, página 474; Ramírez Rivera v. Departamento de Salud, supra, página 817; Misión Industrial v. Junta de Planificación, supra, página 1160; Metropolitana, S.E. v. A.R.P.E., supra, página 213; Hilton Hotels v. Junta Salario Mínimo, supra, página 686. No obstante, el tribunal debe sostener la resolución de un conflicto probatorio por parte de la agencia, siempre que ésta haya sido apoyada en una base racional. J.R.T. v. Línea Suprema, Inc., 89 D.P.R. 840, 849 (1964).
Del mismo modo, este tribunal, como regla general, no alterará las conclusiones de la agencia que estén sostenidas por la pmeba pericial en el caso, en ausencia de razón alguna que justifique intervenir con la apreciación hecha. Agrón Pérez v. F.S.E., 91 J.T.S. 24, a la página 657, Díaz Ortiz v. F.S.E., 126 D.P.R. 32, 41 (1990); González Santiago v. F.S.E., 118 D.P.R. 11, 17 (1986). Sin embargo, este tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción para adoptar su propio criterio en la apreciación o evaluación de la prueba pericial médica. Culebra Enterprises Corp. v. Estado Libre Asociado de Puerto Rico, 91 J.T.S. 128, a la página 108; Hernández Rivera v. Municipio de Bayamón, 94 J.T.S. 68, a la página 11877, 135 D.P.R. 901, 909-910 (1994); Alonso García v. Comisión Industrial, 103 D.P.R. 712, 714-715 (1975); Valldejuli v. A.A.A., 99 D. P.R. 917, 921 (1971); Prieto v. Maryland Casualty Co., 98 D.P.R. 594, 623 (1970); Concepción Guzmán v. A.F. *686 F., 92 D.P.R. 488, 495 (1965); EL.A. v. Fonalledas Córdova, 84 D.P.R. 573, 579-580 (1962).
La especialidad de un perito en cierta área puede ser decisiva en cuanto al valor probatorio de su prueba pericial. Viuda de Torres v. Womble, 99 D.P.R. 859, 876 (1971). Aunque un generalista y un especialista cualifiquen como peritos, el especialista está en mejor posición que el generalista en relación con el valor probatorio de la opinión pericial, pero ello no es factor determinante para la evaluación de la prueba. Dye-Tex Puerto Rico, Inc. v. Royal Insurance Company of Puerto Rico, 2000 J.T.S. 67, a las páginas 935-935.
Por otra parte, las leyes de naturaleza reparadora, como lo es la que regula las pensiones de retiro de empleados públicos, deben ser interpretadas liberalmente a favor del beneficiario. Morales v. Administración de los Sistemas de Retiro, 123 D.P.R. 589, 595 (1989); Acuña v. Junta de Retiro, 58 D.P.R. 94, 100 (1941). Para ser beneficiario de la pensión por incapacidad, dicha incapacidad debe ser de tal naturaleza que inhabilite al empleado para desempeñar las funciones de su empleo y cualquier otro empleo remunerativo. Sánchez v. Administración de Sistemas de Retiro, 116 D.P.R. 372, 376 (1985); Arzola v. Comisión Industrial, 92 D.P.R. 549, 552 (1965); Rodríguez v. Comisión Industrial, 90 D.P.R. 764, 772 (1964); Artículo 10 de la Ley Número 447, supra, 3 L.P.R.A. Sección 770.
III
Nazario alega que la Junta de Síndicos, al denegar la pensión por incapacidad solicitada, no tomó en consideración las evaluaciones siquiátricas de su siquiatra privado, el Dr. Angel Luis Rodríguez. A tales efectos, procede que examinemos la prueba médica que tuvo ante sí la Junta de Síndicos. De la resolución emitida por ésta el 1 de agosto de 2000, surge que fueron considerados los diagnósticos de los doctores Vicente Sánchez Quiles, fisiatra y especialista en medicina intema; José R. Cuebas, médico asesor; Manuel Colón Vargas, siquiatra asesor; Roberto Vera, generalista privado de Nazario, y la doctora Evelyn Rodríguez, neuróloga que examinó a Nazario en dos ocasiones. La Junta de Síndicos, fundamentada en la opinión vertida por estos médicos, así como por las pruebas efectuadas sobre la persona de Nazario, determinó que ésta no reunía los requisitos necesarios conforme las disposiciones legales aplicables para conceder la pensión por incapacidad ocupacional y no ocupacional. La Junta de Síndicos explicó en su resolución que la Ley 447, supra, requiere que dicha incapacidad sea total y permanente desde el punto de vista médico y que, conforme la evaluación de los galenos, Nazario no padecía de una incapacidad tal que la inhabilitara total y permanentemente. Véase, páginas 111-121, según Solicitud de Revisión.
La evaluación siquiátrica del Dr. Angel L. Rodríguez con fecha, de 23 de enero de 1997, indica que Nazario, entre otras condiciones, tiene bloqueos en su memoria, que su grado de concentración es muy pobre y concluye con un diagnóstico de "mayor (sic) depression secondary to physical impairment". Véase, página 172, según apéndice de la Solicitud de revisión. La evaluación 28 de marzo de 1998, indica que Nazario sufre de olvidos, que su concentración es errática y concluye con un diagnóstico de "mood disorder due to bilateral carpal tunnel syndrome and severe depressive features." Véase, página 37, según apéndice de la Solicitud de revisión.
Por otra parte, la revisión médica del expediente con fecha de 9 de julio de 1998, realizada por el doctor Hurtado de Mendoza, siquiatra de la Oficina de Determinación de Incapacidad, quien evaluó el expediente de Nazario, concluyó que la condición mental de Nazario no era severa, ni le produce una incapacidad total y permanente. Para llegar a esta conclusión, el doctor Hurtado de Mendoza consideró ambas evaluaciones siquiátricas del doctor Rodríguez. Según el doctor Hurtado de Mendoza, el informe del doctor Rodríguez de 23 de enero de 1997, indica que Nazario "tiene lentitud sicomotora. No hay distorsiones sicóticas de la realidad. Tiene episodios de llanto. Buena la orientación y la memoria (no hay datos objetivos), pero la reclamante pudo dar un historial detallado de sus condiciones médicas. Las funciones intelectuales conservadas. Juicio y autocrítica deficientes. No hay datos objetivos de la concentración y de la atención (este apartado sin llenar)." El doctor Rodríguez concluyó con un diagnóstico de depresión mayor. El otro informe del doctor Rodríguez de 24 de marzo de 1998, indicó que Nazario "aparece lógica, coherente y relevante. El afecto deprimido. No hay evidencia de trastornos relevantes en la orientación y en la memoria. Las funciones intelectuales y el juicio *687 aparecen deficientes" y establece un diagnóstico de "mood disorder due to bilateral carpal tunnel síndrome with severe depressive features." Luego de exponer el contenido de dichos informes siquiátricos, es que el doctor Hurtado de Mendoza indica que Nazario está "alerta, orientadai lógica y coherente. Sin dificultad para relacionarse adecuadamente. No hay hallazgos de un trastorno mental severo en su funcionamiento que pueda incapacitarla total y permanentemente" y recomienda denegar la solicitud de pensión por incapacidad. Véase, página 20, según apéndice del Alegato del Estado Libre Asociado de Puerto Rico.
En el informe de 28 de junio de 1999, preparado por Francisco San Miguel Fuxench, oficial examinador, éste indica que consideró como parte de la evidencia "5. Evaluaciones siquiátricas de la peticionaria, por el Dr. A. Rodríguez Gómez, de 23 de enero de 1997, y 28 de marzo de 1998". También consideró la opinión del siquiatra Dr. Manuel Colón Vargas, quien concluyó, conforme la evidencia que obraba en el expediente, que Nazario no llenaba los criterios de severidad establecidos en el listado 12.04 de los de la Administración del Seguro Social. El doctor Colón Vargas indicó que Nazario estaba aseada, cooperadora y espontánea; prestaba buena atención, tiene marcha y postura normal, no cojeaba, estaba alerta, con buena memoria y con actividad locomotora normal; no tiene fobias, ni ideas suicidas, y estaba orientada en lugar y tiempo, por lo que el oficial examinador determinó confirmar la determinación que denegaba la pensión por incapacidad. Véase, páginas 61-66, según apéndice de la Solicitud de revisión.
No vemos en qué forma la Junta de Síndicos pasó por alto la evaluación siquiátrica del doctor Rodríguez, si la misma constituyó parte esencial de la evaluación del doctor Colón Vargas. Además, el doctor Hurtado de Mendoza también consideró las evaluaciones siquiátricas en controversia y también concluyó que Nazario no cumplía con los requisitos para concederle pensión por incapacidad. El hecho de que los informes de los doctores Hurtado de Mendoza y Colón Vargas contradigan los hallazgos dél doctor Rodríguez, no constituye fundamento para señalar, como lo hizo Nazario, que los mismos son infundados. Ante la disparidad que reflejaron los informes médicos del doctor Rodríguez ante el informe del doctor Colón Vargas, la Junta de Síndicos resolvió en contra de Nazario. La Junta dio mayor peso probatorio al informe del siquiatra Colón Vargas que al informe del siquiatra Rodríguez.
Nazario no ha demostrado que la determinación de la agencia fue irrazonable de acuerdo a la totalidad de la evidencia que tuvo ante su consideración. Claramente, la Junta de Síndicos analizó la totalidad del expediente y concedió el peso probatorio que estimó pertinente. La determinación de la Junta de Síndicos estuvo sostenida por la prueba pericial del caso y no encontramos razón para intervenir con la misma. La Junta de Síndicos tuvo ante sí la opinión de dos especialistas y concedió mayor valor probatorio a una de ellas.
Este tribunal entiende que aunque la interpretación liberal de la ley es a favor del empleado, la misma tiene que estar fundamentada en los hechos particulares de cada caso. Si es presentada pmeba precisa, clara y contundente, es necesario resolver de acuerdo con ésta. La Junta de Síndicos actuó conforme a pmeba clara y precisa. Este tribunal, como regla general, no alterará las conclusiones de la agencia que estén sostenidas por la pmeba pericial en el caso, en ausencia de razón alguna que justifique intervenir con la apreciación hecha. De conformidad con la totalidad de la pmeba que tuvo ante sí la Junta de Síndicos, la resolución recurrida es razonable y está sustentada por la totalidad de la evidencia sustancial contenida en el expediente administrativo. Por consiguiente, como la Junta de Síndicos no actuó arbitraria, ni caprichosamente, no abusó de su discreción, y como la resolución recurrida es cónsona con la evidencia sustancial que la Junta de Síndicos tuvo ante sí, procede EXPEDIR el auto solicitado y CONFIRMAR la Resolución recurrida.
IV
En vista de los fundamentos que anteceden, EXPEDIMOS el Auto de Revisión solicitado y CONFIRMAMOS la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
*688 Gladys E. Ortega Ramirez
Subsecretaría General
ESCOLIO 2002 DTA 11
1. Nazario indicó que el 7 de febrero de 1978, al doblarse para coger una caja de papas para moverla de sitio, sufrió una lesión en la cintura por la cual fue reportada al FSE. Posteriormente, Nazario fue dada de alta con el diagnóstico de "esguince lumbar" y le fue fijada una incapacidad de 10% por pérdida de las funciones fisiológicas generales. Además, Nazario señaló que el 4 de septiembre de 1985, mientras fregaba con cloro, sintió picor en las manos y adormecimiento. Nazario fue reportada al FSE donde tuvo un diagnóstico de "dermatitis por contacto" y "carpal túnel síndrome bilateral". El FSE dio de alta a Nazario sin fijar incapacidad. El 20 de enero de 1994, Nazario fue reportada nuevamente al FSE, esta vez por razón de que sintió un fuerte dolor en la espalda, hombros y brazo izquierdo cuando levantó una olla con agua. En este caso, fue diagnosticada con "S/P C.T.S. Bilateral", condición de la cual fue operada y compensada. Nazario resultó con una incapacidad de 10% por pérdida de sus funciones fisiológicas de la mano izquierda por la muñeca y 15% por pérdida de sus funciones fisiológicas de la mano derecha por la muñeca.