TEXTO COMPLETO DE LA SENTENCIA
El señor Aurelio Rivera Zeno (Rivera o Recurrente) oportunamente el 25 de septiembre de 2008 presentó ante este Foro “Apelación de Resolución Administrativa” en la que solicita la revisión de la Resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Junta o Recurrida) emitida el 26 de junio y notificada el 26 de agosto de 2008.
La referida resolución de la cual se recurre confirma la determinación de la Administración de los Sistemas de Retiro (la Administración) denegando la solicitud de Rivera de pensión por Incapacidad Ocupacional que éste presentara de conformidad con las disposiciones de la Ley Núm. 447 (Ley 447) del 15 de mayo de 1951, según enmendada, 3 L.P.R.A. sees. 769 y siguientes.
Inconforme, el Recurrente alega que la Junta al así actuar cometió los siguientes errores los cuales, “...por *971 su íntima relación entre sí” procedió a discutir conjuntamente. En términos similares haremos lo propio.

“A. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS EN NO CITAR A LA VISTA UN PERITO MÉDICO QUE PUDIERA TESTIFICAR EN LA VISTA Y EXPLICARLE AL OFICIAL EXAMINADOR SILAS CONDICIONES DEL APELANTE SON INCAPACITANTES Y SI CUMPLEN LOS LISTADOS DE RETIRO DEL GOBIERNO.

B. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS EN NO DARLE PESO A LA HOSPITALIZACIÓN DE MEPSI CENTER QUE TUVO EL APELANTE POR IDEAS SUICIDAS ESTRUCTURADAS Y ALUCINACIONES VISUALES Y AUDITIVAS.

C. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS EN NO TOMAR EN CONSIDERACIÓN, QUE LAS CONDICIONES ORGÁNICAS QUE EL RECLAMANTE PADECE LE PRODUCEN SERIAS LIMITACIONES EN MOVIMIENTOS Y UN DOLOR BIEN SEVERO QUE OBVIAMENTE ES INCAPACITANTE.

D. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS EN DARLE MÁS PESO A LOS RESUMENES DE EXPEDIENTES DE LOS ASESORES MÉDICOS DE LA ADMINISTRACIÓN QUE NUNCA HAN VISTO A LA PARTE RECURRENTE, EN VEZ DE DARLE MÁS PESO A LOS MÉDICOS DE CABECERA DE LA PARTE RECURRENTE QUE LE OFRECEN TRATAMIENTO Y CONOCÍAN BIEN SUS CONDICIONES Y ESTABLECEN QUE ÉL ESTÁ INCAPACITADO TOTAL Y PERMANENTEMENTE.

E. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS EN CONCLUIR QUE LA PARTE RECURRENTE NO CUMPLE CON EL LISTADO 12.04 Y 1.04 [DISORDER OF THE SPINE] DEL LISTINGS DEL SEGURO SOCIAL Y EN NO TOMAR EN CONSIDERACIÓN SI LA COMBINACIÓN DE CONDICIONES DEL APELANTE LO INCAPACITAN TOTALMENTE.

F. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS EN LA DEFINICIÓN DE LO QUE ES UNA PERSONA INCAPACITADA TOTAL Y PERMANENTEMENTE, SEGÚN LA LEY NÚMERO 447 DEL 15 DE MAYO DE 1951.

G. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS AL NO EVALUAR LA CAPACIDAD FUNCIONAL DEL PETICIONARIO PARA HACER OTRO TRABAJO REMUNERATIVO, A LA LUZ DE SU EDAD, PREPARACIÓN ACADÉMICA Y EXPERIENCIA DE TRABAJO.

H. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS AL DETERMINAR QUE EL APELANTE NO LOGRÓ PRESENTAR PRUEBA SUFICIENTE QUE DEMUESTRE QUE TIENE UNA CONDICIÓN LO SUFICIENTEMENTE SEVERA QUE CUMPLA CON LOS REQUISITOS DE SEVERIDAD REQUERIDOS POR LA ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO PARA UNA PENSIÓN POR INCAPACIDAD POR SU CONDICIÓN EMOCIONAL. LA PRUEBA PRESENTADA POR EL APELANTE FUE COMPLETADA, LLENA, CONTUNDENTE Y MÁS QUE SUFICIENTE PARA PROBAR SU INCAPACIDAD.

I. ERRÓ LA HONORABLE JUNTA DE SÍNDICOS AL DECIDIR QUE EL RECLAMANTE NO PRESENTÓ OTRA PRUEBA QUE MENOSCABARA LA PRUEBA IMPUGNADA AL PUNTO DE DERROTAR LA RAZONABILIDAD DE LA DISCUSIÓN Y CONVERTIRLA EN ARBITRARIA O CAPACITADA. EN ESTE CASO, TODAS LAS PRUEBAS DISPONIBLES LAS PRESENTÓ EL RECLAMANTE O SALVO, LOS METIERON INFORMES EN QUE RINDIERON MÉDICOS DE LA ADMINISTRACIÓN QUE NUNCA NI SIQUIERA HAN VISTO PERSONALMENTE AL APELANTE. ”

El 9 de octubre de 2008 solicitamos del Recurrente que informara si interesaba presentar algún medio de reproducción de prueba y concedimos término a la Recurrida para que se expresara. El 23 de octubre de 2008 el Recurrente informó que no interesaba presentar más evidencia médica por entender que la totalidad de la misma *972 obra en el recurso radicado cuyo apéndice, (ap.) consta de (348) folios. De otra parte, la Recurrida hasta la fecha en exceso del término concedido, ha optado por no expresarse sobre la causa, por lo que procedemos a resolver.
Por los fundamentos que se exponen a continuación, se revoca la resolución recurrida.
I
Las determinaciones de hechos de la propia Junta develan que Rivera tiene 62 años de edad, se graduó de escuela superior y laboró para la Administración de Terrenos, Fideicomiso para el Desarrollo, Operación y Conservación de los Parques Nacionales de Puerto Rico, (Parques Nacionales), ocupando un puesto de Trabajador de Conservación y el último como conductor de “Trolley” en el Parque de las Cuevas de Camuy. [1]
Aunque Rivera trabajó más años en el Gobierno de Puerto Rico, ingresó al Sistema de Retiro el 1 de marzo de 1988, cotizando 5.00 años.
El Recurrente sufrió los siguientes accidentes laborales: 27 de diciembre de 1988, al conducir un camión y mover sus brazos, éstos se le afectaron y la CFSE, Caso núm. 89-07-2103, le diagnosticó y relacionó un “Sprain de hombro izquierdo”. Para esa fecha se le había diagnosticado una Bursitis en el brazo izquierdo.
El segundo accidente ocurrió el 25 de julio de 1991 al dirigirse transportando pasajeros hacia la “Cueva Clara”, lastimándose la muñeca del brazo izquierdo. La CFSE, Caso núm. 92-07-00237-2; le diagnosticó y relacionó “Trauma muñeca izquierda”.
El tercer incidente ocurrió el 12 de febrero de 1992 al Rivera ser referido a la CFSE para tratarse una crisis de hipertensión arterial. En esta ocasión no se le relacionó la condición de hipertensión arterial ni la crisis al no estar Rivera trabajando, precisamente por estar reportado al Fondo desde el 25 de febrero de 1992, fecha que representa un desface calendario según el secuencial de lo calendarizado.
La cuarta ocurrencia aconteció el 21 de febrero de 1992, cuando Rivera, conduciendo un “trolley”, sintió un fuerte dolor de espalda que se irradia a la pierna derecha, dolor en la rodilla e hinchazón en la pierna. La CSFE, Caso núm. 92-07-03168-8, le diagnosticó y relacionó en primera instancia, un “HNP L5 SI” y posteriormente, se le relacionó una condición emocional diagnosticada como “Depresión Mayor”.
Luego de trámites ulteriores que incluye una previa apelación a la Junta el 8 de noviembre de 1996, se informó que el Recurrente tenía en apelación ante la Comisión Industrial (C.I.), la relación causal de una condición emocional. Anteriormente, la Administración, luego de estudiar el expediente de Rivera, determinó que al no tener por lo menos diez años cotizados en el Sistema de Retiro, solamente tenía derecho a que se le considere y se evalúe una pensión por incapacidad ocupacional.
La Junta emitió resolución con fecha de 22 de febrero de 2000, archivando el caso sin perjuicio, hasta que la C.I. resolviera la controversia.
La Resolución de la Junta resume con precisión los trámites procesales que posteriormente transcurrieron, Resolución, pág. 3, ap., pág. 351:

“Luego de varios de años de archivo del caso, la parte apelante solicitó la reapertura del caso al obtener la decisión de la Comisión Industrial, relacionando condición emocional (Depresión Mayor) en el caso número 92-07-03168-8. Con esta decisión, la Junta emitió Resolución con fecha de 16 de marzo de 2004, devolviendo el caso a nivel de la Administración para que se evaluara dicha condición médica.

La Administración, luego de evaluar la evidencia médica radicada, determinó que el apelante no estaba 
*973
incapacitado por las condiciones médicas relacionadas por el Fondo del Seguro del Estado, incluyendo la condición emocional. Esta decisión se le notificó al apelante mediante carta con fecha de 14 de junio de 2005.

Es de esta decisión que se trata el caso de autos, cuando se apeló de la denegatoria de la Administración el 13 de julio de 2005. La parte apelada contestó dicho escrito el 21 de diciembre de 2005. Se citó a las partes p una conferencia con antelación a la vista del 31 de octubre de 2006. Las partes comparecieron e informaron estar listos para ver el caso en sus méritos. Con ello, se ordenó el señalamiento de la vista administrativa, la que se celebrara el 18 de abril de 2007. ”

Al no disponer de alguna de las modalidades de reproducción de la prueba oral desfilada en la vista administrativa y evidenciaría, transcribimos el testimonio del Recurrente según lo resume la Junta en la página 3 de su Resolución de 26 de junio de 2008:
“Comenzó su testimonio indicando su nombre completo, edad, casado, vive con su esposa, tiene hijos mayores de edad, vive en su solar que tiene una casa su hija y él con su esposa en la zona rural de Camuy. Su último trabajo fue en la Administración de Terrenos como Chofer de “Trolley” como por cinco años. Su única labor era guiar el “Trolley” con los visitantes. Dejó de trabajar por el accidente, cuando hizo una fuerza con un vagón y se lastimó la espalda. El Fondo le dio tratamiento de terapias, medicamentos y prueba de aguja. Aunque en un momento, el apelante dijo que no recibía ya tratamiento para las condiciones orgánicas. Se aclaró que era con el Fondo, pero que sí tenía tratamiento de terapias. Siente dolor de la cabeza a los pies, le coge las manos, la espalda y las piernas le da como temblor. Tuvo otro accidente cuando dio una curva y el guía le jaló la mano y le sacó el brazo de sitio. Se le hinchó el brazo y tiene dolor fuerte. El Fondo le dio terapias y medicamentos. Padece una condición emocional, le da ansiedad y un desespero, nerviosismo, intranquilo y oye voces y ve sombras. Tiene tratamiento psiquiátrico privado con el Dr. Raúl Benitez. Estuvo hospitalizado en Mepsi una semana internado. Se desesperó y quería suicidarse. En su casa se pasa “encerrao”. Usa bastón que le recetó el Fondo, pues siente a veces “como si se fuera caer”. Su esposa es quien lo ayuda y su hija y su hijo. Casi no puede dormir, le dan medicamentos y duerme a rato. Escucha voces y sombras todos los días. A veces se pone agresivo, le grita a la gente. Va cada dos meses a los médicos y lo que hacen es aumentar la dosis de los medicamentos, que le irrita el estómago. Antes de trabajar en el parque, trabajó como Chofer en la Autoridad de Carreteras, guiando una “pickup” de llevar a los obreros. Con el “Trolley” hacía 25 viajes. No se ha operado de ninguna de las condiciones físicas. Sí ha estado hospitalizado y ha ido a emergencia por el problema de la presión que no se controla. Se lleva bien con su esposa y con sus hijos. Aunque tiene nietos, ellos no van a su casa. Come en el cuarto. Contestó que estaba en la vista administrativa para reclamar sus derechos por su condición del trabajo. ”
El Recurrente fue evaluado por distintos médicos y especialistas y se le realizaron pruebas médicas objetivas durante un período de tiempo que excede los quince años. La prueba médica fue cuidadosamente resumida por la Junta en su Resolución, págs. 4-14 y en el Recurso Apelativo del Recurrente, págs. 4-8. También le dedicamos considerable tiempo y atención a la evidencia médica incluida en el apéndice del recurso, págs. 135-249, especialmente en este último, al “Orthopedic Impairments Medical Report” del Cirujano Ortopédico Juan José Felix reyes, M.D., de fecha 5 de abril de 1999, ap. págs. 169-172. A Continuación su resumen, escrito del Recurrente, pág. 7:
“Informe médico titulado: “Orthopedic Impairments Medical Report” realizado por el Dr. Juan José Félix Reyes, Ortopeda, y fechado el 5 de abril de 1999 donde el diagnostico es: “Degenerative Generalized Osteoarthritis, Cervical Sprain with straightening of the branchial plexus left shoulder, Lumbosacral Myositys and HNP L4-S1 Demonstrated by CT Scan with Radiculopathy of the right leg. Post-Traumatic Condrocostal Chondritis. Arterial Hipertensión.”. El pronóstico es Pobre.
El doctor Félix establece que: “This patient is totally and permanently disabled to work because the *974 cardiac condition (Miocardial Infart) and HNP L5-S1 with radiculopathy to right leg. He also has severe arterial hypertension and D.J.D. He is unable to push, pull, lift, carry on, by standing or sitting for more than 15 minutes, unable to traveling alone and to handling objects. (Apéndice XV)” (Énfasis nuestro).
Igualmente elocuente y lamentable, resulta el resumen del Informe Médico titulado: “Mental Impairment Evidence Report” realizado por el Dr. Armando Fortuño, Psiquiatra, de fecha 20 de diciembre de 2004:
“Informe Médico titulado: “Mental Impairment Evidence Report” realizado por el Dr. Armando Fortuño, Psiquiatra, y fechado el 20 de diciembre de 2004. El doctor Fortuño nos indica que: “El paciente presentó ansiedad, intranquilidad, temblores en las manos, tristeza, desgano, dificultad para concentrarse y dificultad para dormir. La disminución en apetito. Presentaba alucinaciones auditivas que le decían que se quitara la vida y debido a esto fue evaluado en una sala de intervención en crisis. Ha tenido ideas suicidas y planes de hacerlo. El juicio es pobre. La atención y la concentración están deterioradas. Se distrae con facilidad ante cualquier estimulo externo. Lapso de atención corto. No tolera reacciones de estrés. Orienta pobre control de impulsos, explosivo y reacciona con ansiedad severa e irritabilidad. El diagnóstico es: “Trastorno de Depresión Mayor con Rasgos Psicóticos, R/O Trastorno Esquizo afectivo tipo depresivo.” La far macote rupia recetada: Klonopin ling po bid, Paxil 20 mg, Stelaqine 5 mg po hs y Vistaril 50 mg po hs. El pronóstico es pobre y no está apto para realizar trabajo alguno. No está apto para manejar fondos. (Apéndice XV)”. (Énfasis nuestro).
La evidencia médica también resalta la extrema farmacología recetada al señor Rivera durante los últimos quince años.
II
Partamos del hecho de que el Recurrente tiene (62) años de edad, lo cual limita considerablemente su adiestrabilidad.
Nuestra jurisprudencia pauta tres principios fundamentales que debemos tener presentes en la causa que atendemos. “Las leyes que versan sobre pensiones de retiro deben interpretarse liberalmente a favor del beneficiario”. Sanfiorenzo v. Adm. Sistemas de Retiro, 138 D.P.R. 94, 101, (1995). “En lo que respecta a la evaluación de documentos, hemos señalado repetidamente que este Tribunal ocupa igual posición que la de los foros primarios”, Chase Manhattan v. Emmanuelli Bauzá, 111 D.P.R. 708 (1981), por lo que estamos en igual posición que la Junta para evaluar la prueba médica.
Debemos y conferimos la debida deferencia a los organismos reguladores que revisamos; no obstante, debemos indicar y, por lo tanto, revocar, a las agencias cuyas determinaciones producen resultados contrarios a la ley que administran o que llevan a la comisión de injusticias. Calderón Morales v. Adm. de los Sistemas de Retiro, 129 D.P.R. 1020 (1992); Ley de Procedimiento Administrativo Uniforme (LPAU), Art. 4.5, 3 L.P.R.A see. 2175.
Rivera, según el Dr. Juan José Félix Reyes, no puede entre otras actividades levantar algún objeto y ni tan siguiera pararse o sentarse por más de quince minutos. Como bien se señala, el Recurrente Rivera está total y permanentemente incapacitado para realizar las labores de su empleo habitual y de cualquier otro trabajo remunerativo.
El Panel IV de la Región Judicial de San Juan (Caso Núm. KLRA-2001-00579, Rodríguez Muñiz, Juez Ponente), expone con certeza el andamiaje estatutario y reglamentario en lo que concierne a la incapacidad ocupacional. Resumimos con amplitud del referido caso.
La Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. sees. 761 et seq., establece un *975 sistema de retiro y beneficios para los empleados del Gobierno de Puerto Rico. El mismo es un estatuto remedial que persigue favorecer a los empleados cubiertos por el mismo. Calderón v. Administración de los Sistemas de Retiro, 129 D.P.R. 1020, 1031-32 (1992); Morales Vda. de Cortés v. Administración de los Sistemas de Retiro, 123 D.P.R. 589, 595 (1989).
Con relación a la anualidad por incapacidad ocupacional, el Artículo 9 de la Ley Núm. 447, 3 L.P.R.A. see. 769, dispone, en lo pertinente, que:

“Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que: (a) según se dispone en la see. 771 de este título, se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador; (b) el participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad y la incapacidad fuere indemnizable de acuerdo con las disposiciones de las secs. 1 et seq. del Título 11. ”

El Artículo 11 de la Ley, 3 L.P.R.A. see. 771, en lo pertinente, dispone con relación a la incapacidad ocupacional, que:

“Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador y dicha prueba revele que el participante está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado o para trabajar en cualquier empleo retribuido con retribución igual, por lo menos, a la que percibe. El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. ”

Los requisitos arriba reseñados fueron incorporados al reglamento adoptado por la Administración Para la Concesión de Pensiones, Beneficios y Derechos, Reglamento Núm. 4930 (en adelante, el Reglamento).
La Regla 24.2 de dicho Reglamento dispone que para tener derecho a una pensión por incapacidad ocupacional, debe establecerse, entre otros requisitos, que el participante ha presentado "suficiente prueba médica en cuanto a [su] incapacidad mental o física" y que el Fondo del Seguro del Estado ha determinado que la condición incapacitante está relacionada con el empleo del participante y es compensable. Id.
Por su parte, la Regla 24.4 señala que “[s]e considerará capacitado al participante si no está totalmente y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier empleo retribuido, con un sueldo o retribución, por lo menos igual a la que esté percibiendo. ”
Sobre el particular, en Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372 (1985), el Tribunal Supremo de Puerto Rico expresó que “[IJa incapacidad que obligue al retiro al empleado con derecho a la anualidad por incapacidad ocupacional debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo”. Id. a la página 376.
La Regla 24.4 del Reglamento dispone que:
“Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en *976 determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes adicionales que se entiendan necesarios para adjudicar en sus méritos la petición por beneficios de incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. ” (Énfasis suplido.)
Una incapacidad leve que limita las funciones de un empleado, pero que no le impide llevar a cabo las funciones de su trabajo o de cualquier otro empleo remunerativo, no da base para recibir una pensión bajo el estatuto. Sánchez v. A.S.R.E.G.J., supra, a la página 376.
Los “criterios médicos” mencionados en la Regla 24.4 del Reglamento son aquellos adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal, 20 C.F.R. Pt. 404, Subpt. P., App. I. Véase Reglamento Núm. 4930, R. 5.9.
El Tribunal Supremo de Puerto Rico ha reconocido que, históricamente, no ha sido fácil a los tribunales la determinación de qué significa el concepto inhabilidad o incapacidad para realizar cualquier trabajo remunerado. Rodríguez Ortiz v. Comisión Industrial, 90 D.P.R. 764, 773 (1964). Sin embargo, sí ha resaltado que la jurisprudencia existente ha coincidido “en que ello no significa que el obrero tenga que estar tan impedido o inhabilitado físicamente, o que tenga una condición de salud tan ruinosa que su estado no le permita ninguna actividad, excepto mantenerse vivo. ” Id. a la página 773.
Las expresiones del Tribunal Supremo son en el contexto de la Ley de Compensaciones por Accidentes del Trabajo. No obstante, dicho estatuto, al igual que otros reseñados en el caso de Rodríguez Ortiz, supra, tiene un lenguaje similar al que la Ley del Sistema de Retiro utiliza para describir la incapacidad total y permanente. “[L]as lesiones que tengan por consecuencia la incapacidad total y permanente del obrero para hacer toda clase de trabajo u ocupaciones remunerativas. ” 11 L.P.R.A. sec. 3(d).
Al analizar las determinaciones de hechos expuestas y la evidencia aceptada por la Junta de Síndicos que obra en el expediente, a la luz de la doctrina anteriormente reseñada, somos del criterio que la Junta de Síndicos erró al no tomar en consideración que las condiciones orgánicas y mentales que Rivera padece le producen serias limitaciones de movimientos y dolores de tal severidad que obviamente son totalmente incapacitantes.
III
Por los fundamentos antes expuestos, se expide el auto solicitado, se revoca la resolución recurrida y se ordena a la Junta de Síndicos conceder al Recurrente la pensión por incapacidad ocupacional solicitada.
Notifíquese de inmediato.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria Tribunal de Apelaciones
ESCOLIO 2009 DTA 45

1. Nombre correcto es “Parque de las Cavernas del Río Camuy”.