TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos la Sra. Milagros Quiñones de Maldonado (la Sra. Quiñones o la recurrente) mediante el recurso de revisión de epígrafe. Nos solicita que revoquemos la Resolución emitida por la Junta de Síndicos (la Junta de Síndicos) de la Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura (la Administración o la recurrida) el 11 de mayo de 2006 y notificada el 15 de junio de igual año. Por medio de la misma, la Junta de Síndicos confirmó la decisión de la Administración de denegar la solicitud de la recurrente para que se le concedieran los beneficios de una pensión por incapacidad no ocupacional.
*631 Examinado minuciosamente el recurso presentado, los documentos que obran en autos y el derecho aplicable, resolvemos confirmar la resolución recurrida.
I
La Sra. Quiñones se desempeñó como Supervisory de Asistencia Social y Familiar en el Departamento de la Familia. Durante ese tiempo, cotizó 24.25 años de servicio al sistema de retiro de los empleados gubernamentales.
El 29 de mayo de 1998, la recurrente presentó su solicitud de pensión por incapacidad en la Administración. Posteriormente, la recurrida denegó esa solicitud por entender que la Sra. Quiñones estaba capacitada para desempeñar labores en el servicio público. Después de que la recurrente presentara la correspondiente apelación ante la Junta de Síndicos, esta última devolvió el caso a la Administración para que evaluara prueba nueva presentada por la Sra. Quiñones. Evaluada dicha prueba, el 28 de octubre de 2003, la recurrida denegó nuevamente los beneficios por incapacidad a la recurrente. Insatisfecha con esa denegatoria, la Sra. Quiñones presentó una apelación ante la Junta de Síndicos el 20 de noviembre de 2003.
Luego de la que Sra. Quiñones renunciara a la celebración de una vista evidenciaría ya pautada, ella solicitó que la Junta de Síndicos tomara su decisión a base de la siguiente prueba médica obrante en su expediente:

“a. Ecocardiograma 2D con Doppler y color flow- 12 de septiembre de 1996- Sugirió leve regurgitación de la válvula tricúspide cardiaca, no hay anormalidades de movimiento de la pared sugestivo de isquemia. El tamaño de las cámaras cardiácas es adecuado, no se ven trombos. No hay evidencia de hipertensión pulmonar en el ventrículo y aurícula derecha. No hay engrosamiento pericardíaco ni efusión. Se le practicó examen de resistencia (treadmill) que fue fronterizo. La presión sanguínea fue de 120/80.

b. EKG 16 de septiembre de 1996- negativa.

c. CT Scan del cerebro- 3 de octubre de 1997- negativa.

d. Radiografía del pecho- 31 de enero de 1998- negativa.

e. Notas de progreso sala de emergencia donde fue atendida por migraña en las siguientes fechas: el 24 de enero de 1992, 22 de febrero, 18 de abril y 2 de junio de 1996; 1 de septiembre y 1 de diciembre de 1997; 2 y 13 de agosto, 7 de septiembre y 23 de diciembre de 1998.

f. Notas de progreso sala de emergencia por diagnóstico de asma bronquial en 21 y 28 de enero de 1998.

g. Informe médico especial por cefalalgia vascular y tensional- Dr. Bonilla Torres- Ha tenido cefaleas en tres ocasiones teniendo que ir a sala de emergencia, una [sic] veces ocurren en el lado derecho, otras en el lado izquierdo de la cabeza con fotofobia, sonofobia y n[á]useas, sin vómitos y acidez gástrica. Insomnio ha mejorado, rayos X y CT sean en tres ocasiones negativos. No hay déficit de funciones cerebrales, cerebelosas o de pares craneales sensoriales de reflejos ni motor.

h. Pulmonary Medical Report- 23 de diciembre de 1998- Dr. Deliz Ramírez- Generalista - En la pregunta número 15 del cuestionario, el médico responde que: “Su condición asmática no la incapacita ella sola, que aunque son crisis fuertes no son incapacitantes”.

i. Centro Cardiovascular de S.G.- 11 de agosto de 2004- Dr. A. Lugo/ Dr. N. Rodríguez- Comments: Sinus rhythm. No pauses. Low grade sinus tachycardia. Unspecific ST changes. No serious arrhythmias.

j. Echocardiographic Doppler- 10 de agosto de 2004- Dr. A. Lugo- Conclussions- Preserved left ventricular 
*632
function. No wall motions abnormalities. Normal right ventricle. Mitral and aortic valves: normal. Pulmonic and tricuspid valves: normal. Normal mitral and tricuspid regurgitation.

k. EMG-16 de diciembre de 2003- Right median neuropathy across the wrist. Bilateral ulnar neuropathy.

l. Notas de progreso- Dr. Jorge L. Valentín [el Dr.Valentín]- Psiquiatra- Las notas de progreso de 2003 al 2005 reflejan una aparente mejoría en términos de que las visitas se han hecho menos frecuentes, esto es, de aproximadamente cada mes a intervalos de cada dos meses.

m. Evaluación psicológica- Joan Ruiz- Psic[ó]loga- 16 de octubre de 1997- Alerta, coherente, lógica y relevante, orientada en las tres esferas. Funciones de atención, concentración, memoria, razonamiento, comprensión, juicio, introvisión y abstracción estima que son eficientes. No hay ideas suicidas, no trastornos precept[u]ales ni delirios. Dx.: Trastorno de ansiedad NOS.

n. Mental impairment evidence report- Dr. Ariel Rojas- Psiquiatra- 13 de enero de 1999- Bloqueo de pensamientos, orientada en las tres esferas, memoria pobre, aislada, pobre tolerancia al stress. Dx.: Desorden depresivo mayor. GAF: 60%.

o. Dr. José Zamora- 29 de octubre de 1997- Psiquiatra- Sin hospitalización psiquiátrica. Limpia y aseada. No alucinaciones ni delirios. Negó ideas suicidas; afecto adecuado. Orientada en las tres esferas. Memoria pobre. Capacidad intelectual adecuada.

p. Mental impairment evidence report- Dr. Jorge I. Valentín- Psiquiatra- 3 de noviembre de 1999— Hospitalizada en San Juan de Capestrano de 28 de marzo al 2 de abril de 1999 por depresión y dependencia a medicamentos. Lógica, coherente, relevante. Se distrae fácilmente, se bloquea para hablar del trabajo. No alucinaciones ni delirios. Funciones intelectuales conservadas. Juicio bueno. Introvisión mejorada, necesita terapia. Dx.: Depresión mayor recurrente severa. GAF: 60.

q. Mental impairment evidence report- 15 de junio de 2000- Dr. Rodrigo Freytes [el Dr. Freytes]--Psiquiatra- Viste ropa casual y tiene buena higiene personal. Expresión facial de tristeza y preocupación. Cooperadora, espontánea. Postura relajada. Lentitud psicomotora. Lógica, coherente y relevante. No bloqueos ni asociaciones laxas. No alucina ni presenta delirios, nifobias. Tiene fuertes ideas de minusvalía e impotencia física. No tiene ideas suicidas ni ideas homicidas. Afecto apropiado y estado de ánimo deprimido. Orientada en persona y lugar, parcialmente menoscabada en tiempo. Memoria inmediata menoscabada, reciente y remota conservada. Tendría dificultad para concentrar. Dx: Trastorno depresivo mayor recurrente severo sin psicosis. GAF 55%. Puede manjar [sic] sus bienes.

r. Mental impairment evidence report- 10 de marzo de 2003- Dr. Jorge L. Valentín- Psiquiatra- Examen mental: aseada, ropa sencilla, sin problemas de movimiento. Retraída, cooperadora. Actividad psicomotora lenta, lógica, relevante, muy distraída. No alucinaciones, no delirios, obsesión con limpieza y orden. Afecto restringido; talante triste. Orientada en las tres esferas. Memoria inmediata y reciente menoscabada; remota conservada. Juicio regular. Atención y concentración menoscabada. Dx.: Depresión mayor recurrente severa. GAF: 60%. Sin capacidad para manejar sus bienes. ”

El 11 de mayo de 2006, la Junta de Síndicos emitió la resolución recurrida. En ella, determinó lo siguiente:

“La prueba objetiva y clínica anterior demuestra, que aunque las condiciones y enfermedades de tipo orgánico imponen limitaciones a la capacidad de la apelante de desempeñarse en una actividad lucrativa, éstas por sí solas ni en combinación, le impedirían llevar a cabo las funciones de su trabajo o de cualquier otro empleo remunerativo, tal y como lo require el estado de derecho vigente.

*633
Analizada la prueba médica que obra en el expediente, concluimos que la condición orgánica de la parte apelante no es de una severidad tal que le impida desempeñar las labores de su empleo o de cualquier otro dentro de su agencia. ”

En cuanto a la condición emocional de la Sra. Quiñones, la Junta de Síndicos halló que sus síntomas son moderados, por lo cual no la incapacitaban de manera tal que no pudiese ocupar trabajo remunerado alguno en el servicio de su patrono.
Inconforme, la recurrente presentó el recurso de revisión de epígrafe. En el mismo, señaló los siguientes errores:

“Erró la Honorable Junta de Síndicos del Sistema de Retiro en la interpretación que hace de la ley y el reglamento, ya que es irrazonable y produce resultados inconsistentes con, o contrarios, al propósito de la ley y lleva a la comisión de una injusticia.

Erró la Honorable Junta de Síndicos en no tomar en consideración, que las condiciones orgánicas que ella padece le producen serias limitaciones de movimientos y un dolor bien severo que obviamente es incapacitante.

Erró la Honorable Junta de Síndicos al no mencionar y discutir la decisión del Seguro Social que le aprueba la pensión por encontrar que está incapacitada total y permanentemente por cumplir el listing 12.04 y no tomar en consideración que la apelante tiene ideas suicidas y padece de una seria condición emocional diagnosticada como depresión mayor severa con razgos [sic] sicóticos.

Erró la Honorable Junta de Síndicos en darle más peso a los resúmenes de expedientes de los asesores médicos de la Administración que nunca han visto a la parte recurrente, en vez de darle más peso a los médicos de cabecera de la parte recurrente que le ofrecen tratamiento y conocían bien sus condiciones y establecen que ella está incapacitada total y permanentemente.

Erró la Honorable Junta de Síndicos en la definición de lo que es una persona incapacitada total y permanentemente, según la Ley 447 del 15 de mayo de 1951.

Erró la Honorable Junta de Síndicos en concluir que la parte recurrente no cumple con el listado 12.04 de los listings del Seguro Social y en no tomar en consideración si la combinación de condiciones de la apelante la incapacitan totalmente.

Erró la Honorable Junta de Síndicos al no evaluar la capacidad funcional de la peticionaria para hacer otro trabajo remunerativo, a la luz de su edad, preparación académica y experiencia de trabajo. ”

Luego de otorgarle un plazo, la Administración presentó su alegato de oposición el 27 de septiembre de 2006. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
Como cuestión de umbral, reafirmamos el principio de que a toda determinación administrativa le cobija una presunción de regularidad y corrección. Tal y como lo ha interpretado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. Otero Mercado v. Toyota de P.R., 163 D.P.R. _ (2005), 2005 J.T.S. 13; Pacheco Torres v. Estancias de Yauco S.E., 162 D.P.R. _ (2003), 2003 J.T.S. 148.
La presunción de corrección que cobija una decisión administrativa, deberá sostenerse en los tribunales a *634 menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones, 124 D.P.R. 858 (1989); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1989). Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, 133 D.P.R. 521, 533 (1993); Asoc. de Doctores en Medicina al Cuidado de la Salud Visual v. Morales, 132 D.P.R. 567, 589 (1993).
Al enfrentarse a una petición para revisar judicialmente una determinación administrativa el tribunal analizará si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. v. Junta Reglamentadora de Telecomunicaciones, 151 D.P.R. 269, 281 (2000); Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263, 279-280 (1999). Véase también Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. edición, Bogotá, Forum, 2001, págs. 533-536.
En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la sección 4.5 de la la Ley de Procedimiento Administrativo Uniforme. 3 L.P.R.A. § 2175 (la L. P.A.U.). Dicha sección, establece que “[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. ” Véanse también Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Asociación de Vecinos del Hospital San Jorge v. United Medical Corp., 150 D.P.R. 70, 75 (2000). El expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de ésta. Comisionado de Seguros v. Prime Life Partners, Inc., 161 D.P.R. _ (2004), 2004 J.T.S. 105; Torres Acosta v. Junta Examinadora de Ingenieros, Arquitectos y Agrimensores, 161 D.P.R. _ (2004), 2004 J.T.S. 71.
El concepto de evidencia sustancial ha sido definido por la jurisprudencia como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901, 905 (1999); Misión Industrial v. Junta de Planificación, 146 D.P.R. 64, 134 (1998); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Pero tampoco se considerará como correcta una determinación sostenida por un mero destello de evidencia. Id. El criterio rector en estos casos será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. Id.; Otero Mercado v. Toyota de P.R., supra; Fuertes v. A.R.P.E., 134 D.P.R. 947 (1993). Por ende, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa, tiene el peso de la prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que se llegó son irrazonables. Ramírez Rivera v. Departamento, de Salud, supra, a la pág. 906; Misión Industrial v. Junta de Planificación, supra, a la pág. 131.
Conforme a lo dispuesto por ley, existe una práctica judicial claramente establecida de conceder gran consideración y deferencia a las decisiones de los foros administrativos. Otero Mercado v. Toyota de P.R., supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Misión Industrial v. Junta de Calidad Ambiental, 145 D.P.R. 908, 929 (1998). Dicha deferencia emana del reconocimiento de que, de ordinario, las agencias administrativas están en mejor posición para hacer determinaciones de hechos al tratar con una materia sobre la cual tienen un conocimiento especializado. Id; Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995); Gallardo v. Clavell, 131 D.P.R. 275 (1992). Más aún, cuando una determinación de una agencia esté sustentada por evidencia sustancial que obre en el expediente del caso, los tribunales deben abstenerse de sustituir el criterio de la agencia por el judicial. Otero Mercado v. Toyota de P.R., supra; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85, 95 (1997).
*635 No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una abdicación de la función revisora del foro judicial. Por el contrario, los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones ultra vires, inconstitucionales o arbitrarias de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o cuando hay ausencia de prueba adecuada o se cometió error manifiesto en la apreciación de la misma. Comisionado de Seguros v. Prime Life Partners, Inc., supra; Torres Acosta v. Junta Examinadora de Ingenieros, Arquitectos y Agrimensores, supra; O.E.G. v. Rodríguez, 159 D.P.R. _ (2003), 2003 J.T.S. 51.
Ahora bien, según lo dispone la ya mencionada sección 4.5 de la L.P.A.U., “[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ” El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales por lo cual no se adelanta ningún fin público dándole deferencia a la agencia en cuanto a este aspecto. San Antonio Maritime v. Puerto Rican Cement, 153 D.P.R. 374 (2001); Miranda v. C.E.E., 141 D.P.R. 775, 787 (1996).
Sin embargo, lo anterior no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran. Ello, debido a que por tratarse de áreas del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. Asociación de Vecinos del Hospital San Jorge v. United Medical Corp., supra; Rivera Rentas v. A & C Development, 144 D.P.R. 450, 461 (1997).
El criterio de revisión en cuanto a las interpretaciones legales hechas sobre los estatutos que maneja la agencia debe ser también uno de razonabilidad. Aún así, la deferencia que merecen estas interpretaciones legales, cede ante una actuación irrazonable o ilegal que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. Sánchez Torres v. Hospital Dr. Pila, 158 D.P.R. __ (2002), 2002 J.T.S. 154.
No obstante, en cuanto a las conclusiones de derecho que no envuelven interpretaciones de las leyes y reglamentos que administra la agencia cuya decisión es impugnada ni dentro del área de especialidad de ésta, las mismas son revisables por los tribunales sin limitaciones. Misión Industrial v. Junta de Planificación, supra, a la pág. 134; Rivera Rentas v. A & C Development, supra, a las págs 462-463.
Por otra parte, mediante la aprobación de la Ley Núm. 447 de 15 de mayo de 1951, 3 LPRA see. 761 et seq (la Ley Núm. 447), la Asamblea Legislativa creó un sistema de retiro y beneficios para la gran mayoría de los empleados gubernamentales del país. Al tenor de lo establecido en la mencionada legislación, prácticamente todos los empleados del servicio público están obligados a participar de dicho sistema, quedando así sujetos a las disposiciones de la misma. Calderón v. Administración de los Sistemas de Retiro, 129 D.P.R. 1020, 1031-1032 (1992); Morales Vda. de Cortés v. Administración de los Sistemas de Retiro, 123 D.P.R. 589, 595 (1989).
Ahora bien, en cuanto a los criterios para la concesión de pensiones por incapacidad a empleados del servicio público, los artículos 9, 10 y 11 de la Ley Núm. 447 disponen en lo pertinente:

“Artículo 9

Todo participante’ que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:

a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante 
*636
conforme a los criterios que mediante reglamento fije el Administrador.

b)...

c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.

d) El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud. (Enfasis suplido). 

Artículo 10

Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, tendrá derecho a una anualidad por incapacidad no ocupacional [...]. (Enfasis suplido). 

Artículo 11

Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios que mediante reglamento fije el Administrador y que dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado [...]. (Énfasis suplido). [3]”

Conforme lo dispone la Ley Núm. 447, a los fines de poner en vigor las disposiciones de la mencionada legislación, la Administración adoptó el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930 del 25 de junio de 1993 (el Reglamento 4930). La Regla 24.2 del mencionado Reglamento establece los requisitos a cumplirse para ser acreedor de una pensión por incapacidad ocupacional. En lo pertinente, ésta establece como requisitos:

“a) que el participante esté en el servicio activo a la fecha de radicación de la solicitud;

b) que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante;

c)...

d) ... (Énfasis suplido). ”

La Regla 24.4 por su parte, limita la determinación de incapacidad ocupacional disponiendo en lo pertinente que:
“Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") [4] establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes adicionales que se entiendan necesarios para adjudicar en sus méritos la petición por beneficios de incapacidad. Los 'exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y permanentemente *637 incapacitado e imposibilitado de cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con sueldo o retribución por lo menos igual a la que esté percibiendo. ” (Énfasis suplido).
En cuanto a la incapacidad no ocupacional, la Regla 25.3 dispone como requisitos para demostrar que se es acreedor de dichos beneficios:

“a) tener por lo menos diez (10) años de servicios acreditables;

b) estar en el servicio activo a la fecha de radicación de la solicitud;

c) que la incapacidad física o mental no haya sido provocada por hábitos viciosos, intemperancia o mala conducta;

d) que se reciba suficiente prueba de la incapacidad del participante, que demuestre que está incapacitado total y permanentemente para cumplir con los deberes de cualquier cargo que en el servicio del patrono se le hubiese asignado o para trabajar en cualquier clase de empleo retribuido, por lo menos con una retribución igual a la que tenía derecho a estar percibiendo estando en el servicio activo. ” (Énfasis suplido).
De igual manera, la Regla 25.4 limita las situaciones en las que se podrá considerar que existe incapacidad no ocupacional al señalar que:
“[...] Se considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado de cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con sueldo o retribución por lo menos igual a la que esté percibiendo. ” (Énfasis suplido).
Surge de las normas ya citadas que las determinaciones que hacen la Administración en primera instancia y la Junta de Síndicos en apelación se basan tanto en la prueba médica que tengan ante sí como en la evaluación de sus propios peritos. Así pues, dichas determinaciones no se sostienen por evaluaciones hechas por otras agencias, como el Seguro Social Federal o el mismo Fondo del Seguro del Estado. En López Echevarría v. Adm. de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, 168 D.P.R. _ (2006), 2006 J.T.S. 146, el Tribunal Supremo indica:

“El hecho que la Administración utilice el mismo listado de criterios que usa la Administración del Seguro Social no la obliga en las determinaciones sobre incapacidad, sobretodo cuando el Reglamento establece claramente el grado de incapacidad a probarse, que debe ser total y permanente. En específico, el empleado será considerado capaz si no prueba su incapacidad total y permanente. La agencia queda autorizada a determinar, basada en la evidencia sometida, si hay o no incapacidad para la concesión de la pensión. ”

En Benjamín Díaz Hernández et al. v. Pneumatics & Hydraulics, Inc. et al., 169 D.P.R. _ (2006); 2006 J.T.S. 162; acaba de pautar el Tribunal Supremo:

“[E]n S.L.G. Afanador v. Roger Electric Co., Inc., caso de discrimen por sexo, en su modalidad de hostigamiento sexual en el empleo, el Juez Asociado Señor Fuster Berlingeri expresó, en Opinión de Conformidad, lo siguiente: “...no puede considerarse aquí que la determinación de incapacidad de la Administración del Seguro Social Federal es de carácter concluyente con respecto a la diferente determinación judicial que debe hacerse al amparo de la Ley sobre Hostigamiento Sexual en el Empleo, de si el trabajador hostigado puede o no ser repuesto en su cargo. ” (...) En dicho caso, similar a como ocurrió en el presente, la parte demandante obtuvo una determinación de incapacidad de la Administración del Seguro Social Federal. Sin 
*638
embargo, nos negamos a otorgarle carácter concluyente a dicha determinación de incapacidad, a los fines de concederle al demandante, sin más, paga por pérdida de ingresos futuros o paga prospectiva. Establecimos que debía demostrarse ante el foro primario si el demandante estaba o no incapacitado; si a la luz de ello, procedía decretar la reposición en el empleo, o debía decretarse paga adicional por concepto de pérdida de ingresos futuros o paga prospectiva. Al hacer una determinación de incapacidad, la Administración del Seguro Social Federal sigue un procedimiento reglamentario establecido y toma en consideración determinados criterios de elegibilidad para la otorgación de una pensión, ajustados a los fines y propósitos de la legislación de seguridad social federal. Se trata de un procedimiento administrativo, en el cual las partes son el solicitante y la agencia federal. ”

Ya está claro que el hecho de que se haya adoptado el mismo listado de criterios que usa la Administración del Seguro Social para determinar incapacidad, no obliga a la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura ni a su Junta de Síndicos a adoptar las determinaciones sobre incapacidad que la agencia federal haga en un caso ante agencias estatales. En Sánchez v. A.S.R.E.G.J., 116 DPR 372, 376 (1985), el Tribunal Supremo pautó que las disposiciones de nuestra ley son de naturaleza reparadora y tienen el propósito de hacer justicia social. Aún así, subraya que su propósito es beneficiar a personas que estén permanentemente incapacitadas para desempeñar las funciones de su empleo y cualquier otro remunerativo. Las condiciones médicas que cumplen ese estándar deben superar un criterio de severidad más estricto que el federal.
La Ley de Incapacidad del Seguro Social Federal, 20 C.F.R, 404, define su pauta de severidad: “A severe impairment is one that more than minimally limits the claimant’s capacity to perform basic work related activities.” (Enfasis nuestro). Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, nuestra ley considera incapacitado a un participante cuya prueba médica revela “que está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiera asignado. ” Artículo 11 de la Ley Núm. 447, 3 L.P.R.A., see. 771. (Énfasis nuestro). La Regla 24.4 del Reglamento 4930 establece que:
“Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiese asignado para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que está percibiendo. ” (Énfasis nuestro)
Finalmente, nuestro más Alto Foro ha establecido que “fija incapacidad que obligue al retiro del empleado con derecho a la anualidad que autoriza [la Ley Núm. 447] debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo”. Sánchez v. A.S.R.E.G.J., supra.
Ill
Los errores señalados por la recurrente requieren que evaluemos si el expediente ante nos sostiene su solicitud para recibir los beneficios de una pensión por incapacidad no ocupacional, acorde con la Ley Núm. 447 y el Reglamento 4930, según enmendado. Alega la Sra. Quiñones que la Junta de Síndicos incidió al no tomar en cuenta la totalidad de su expediente médico conforme a los correspondientes listados médicos.
Por su parte, la Administración alega que la recurrente no rebatió con evidencia suficiente la presunción de regularidad y corrección que tienen las determinaciones de la Junta de Síndicos. Arguye además que la Sra. Quiñones no puso en posición a la recurrida para establecer la incapacidad inhabilitadora requerida por nuestro ordenamiento jurídico para obtener la pensión por retiro. Le asiste la razón a la Administración.
*639 Surge de la resolución recurrida que la Junta de Síndicos evaluó las condiciones orgánicas de la Sra. Quiñones a la luz de los siguientes listados médicos:
ASR -3.03 - ASMA con:

“A. Bronquitis Asmática Crónica. Se evaluará bajo el criterio para enfermedad pulmonar obstructiva con el código 3.02a; o

B. Ataques Asmáticos (como se definen en el 3.00c), a pesar de la terapia prescrita, que requieren intervención médica y que ocurran al menos, un ataque cada dos meses o seis veces al año. Cada hospitalización de más de 24 horas para controlar el asma cuenta por dos ataques y un período de evaluación de al menos 12 meses consecutivos deberá ser usado para determinar la frecuencia de los ataques.

ASR- 4.03- Enfermedad cardiovascular hipertensiva. Evaluar bajo 4.02 o, 4.04, o bajo el criterio del sistema orgánico afectado (2.02 al 2.04, 6.02, ó 11.04ao B.

ASR- 11.03- Epilepsia de convulsiones motoras menores documentada por EEC y por una descripción detallada de un patrón de convulsión típica, incluyendo todos los fenómenos asociados y que ocurran con más frecuencia que una vez a la semana a pesar de seguir, al menos, tres meses de tratamiento. ”

En cuanto a las condiciones de migraña crónica, la Administración evaluó un informe médico del Dr. Bonilla Torres del cual se desprende que no hay déficit en las funciones cerebrales, cerebelosas o de pares craneales sensoriales de reflejos ni motor. Con relación a la condición de asma, la recurrida hizo constar que en el expediente no existe evidencia objetiva alguna sobre la función pulmonar de la Sra. Quiñones. Sin embargo, del Pulmonary Medical Report surge que la condición asmática de la recurrente no es incapacitante por no existir prueba de bronquitis asmática crónica, de la ocurrencia de ataques asmáticos ni de hospitalización por más de 24 horas debido a ataques de asma.
Asimismo, la recurrida evaluó el récord administrativo con relación a la hipertensión de la Sra. Quiñones y no halló evidencia de que la misma fuera de gravedad. Para llegar a esa conclusión, la Administración tomó en consideración el informe del Dr. A. Lugo - el cual consta en autos- que determinó que la recurrida no sufría de una arritmia seria. [5] En su recurso, la Sra. Quiñones no nos señaló qué prueba obra en el expediente en autos relacionadas con sus condiciones orgánicas que controvierta las determinaciones de la Administración. En consecuencia, entendemos que tales condiciones carecen de la suficiente gravedad como para incapacitarla para el servicio público.
Por otro lado, la recurrida utilizó los siguientes listados médicos para evaluar las condiciones mentales de la Sra. Quiñones:

“12.04 DESORDEN AFECTIVO

Caracterizado por cambios de ánimo acompañado de síndrome maniático o depresivos parciales o totales. “Animo” se refiere a emociones prolongadas que matizan toda la vida psíquica, generalmente envolviendo depresión o exaltación. Deben cumplirse (A) y (B)) o (C).

A. Persistencia continua o intermitente documentada médicamente de UNA (1) de las siguientes:

1) Síndrome de Depresión Mayor, caracterizada por lo menos por CUATRO (4) de las siguientes, entre las que debe incluir, ya sea el (a) o (b).

*640
a. Marcada disminución de interés en casi todas las actividades;

b. Disturbios de apetito con cambio de peso;

c. Disturbio de sueño;

d. Agitación o retardación Psicomotora;

e. Pérdida de energía;

f. Sentimientos de minusvalía o culpa;

g. Dificultad de concentración o pensamiento;

h. Pensamientos suicidas;

i. Alucinaciones, delirios o pensamientos paranoicos,

o

2) Síndrome Maniático (Manic Syndrome), caracterizado con por lo menos TRES (3) de las siguientes:

a. Hiperactividad;

b. Presión en el habla;

c. Vuelo de ideas;

d. Inflada autoestima;

e. Disminución en la necesidad de sueño;

f Facilidad para distraerse;

g. Envolvimiento en actividades de alto potencial de consecuencia dolorosas;

h. Alucinaciones, delirios o pensamiento paranoico,

o

3) Síndrome Bipolar con historial de episodios periódicos manifestados por cuadro de sintomatología completa de AMBOS Síndromes maníaco y depresivo (y actualmente o más recientemente caracterizada por un cuadro parcial o total de alguno o ambos síndromes).

y

B. DOS (2) de las siguientes:

1. Marcada restricción en actividades de la vida diaria;

*641
2. Marcada dificultad en mantener funcionamiento social;

3. Marcada dificultad en mantener el paso, la concentración o persistencia;

4. Repetidos episodios de descompensación, cada uno de duración extendida,

o (En lugar deAyB)

C. Historial médico documentado de desorden afectivo crónico de por lo menos dos (2) años de duración que haya causado más que una limitación mínima para realizar actividades básicas de trabajo, con síntomas o signos actualmente atenuados por medicación o soporte psicológico y UNO (1) de los siguientes:

1) Repetidos episodios de descompensación de duración extendida:

2) Un proceso de enfermedad residual que haya resultado en un ajuste marginal de tal tipo que un aumento mínimo en las demandas mentales o cambios de ambiente predeciblemente causarán descompensación al individuo; o

3) Historial corriente de 1 o más años de inhabilidad de funcionar fuera de ambientes que le ofrezcan gran respaldo, con indicaciones de continua necesidad de ese tipo de providencias.

12.06- TRASTORNOS RELACIONADOS A LA ANSIEDAD

En estos trastornos, la ansiedad puede ser el disturbio predominante o ser experimentada si el individuo intenta dominar los síntomas; por ejemplo, confrontado el objeto o la situación temida en un trastorno fóbico o resistiendo las obsesiones o compulsiones en los trastornos obsesivos compulsivos.

El nivel de severidad requerido para estos trastornos se alcanza cuando los requisitos Ay B son satisfechos o cuando se satisfacen los requisitos Ay C.

A. Hallazgos médicamente documentados de por lo menos uno de los siguientes:

1. Ansiedad generalizada persistente acompañada por tres de los cuatro signos o síntomas siguientes:

a. Tensión motora; o

b. Hiperactivad autonómica; o

c. Espera temerosa; o

d. Vigilancia y escudriñamiento suspicaz; o

2. Temor irracional y persistente de un objeto, actividad o situación específica que resulta en un deseo apremiante de evadir el objeto, actividad o situación temida; o

3. Ataques de pánico severos y recurrentes manifestados por un comienzo súbito e impredecible de una aprensión, miedo o terror intenso, junto a una sensación de desenlace fatal inminente y que ocurren con un promedio de por los menos una vez a la semana; o

4. Obsesiones o compulsiones recurrentes que son la fuente de marcada angustia; o

*642 5. Recuerdos recurrentes e inoportunos de una experiencia traumática que son la fuente de marcada angustia; y

B. Resultando por lo menos en dos de los siguientes:

1. Restricciones marcadas en las actividades del diario vivir; o

2. Dificultades marcadas para mantener el funcionamiento social; o

3. Dificultades marcadas para mantener la concentración, la persistencia o el ritmo; o

4. Episodios repetidos de descompensación con duración prolongada; o

C. Resultando en una inhabilidad completa para funcionar de forma independiente fuera del área del propio hogar. ”

La Administración encontró que los trastornos mentales de la recurrente no cumplen con los criterios de los mencionados listados médicos. Según ésta, los informes periciales evaluados no establecen que la Sra. Quiñones sufra de alucinaciones, delirios, ideas suicidas u homicidas; que haya incurrido en actividades de alto riesgo; ni que existan restricciones marcadas en las actividades del diario vivir y de dificultad para mantener actividades sociales.
En su recurso, la recurrente nos señala varios informes médicos relacionados con sus condiciones emocionales. Si bien es cierto que de dichos informes surge que la Sra. Quiñones sufre de padecimientos emocionales, somos de la opinión que de los mismos no se sostiene la incapacidad total y permanente de ésta.
Entre los informes que hemos evaluado, se destacan el Mental Impairment Evidence Report suscrito por el Dr. Valentín el 3 de noviembre de 1999 y el Mental Impairment Evidence Report del Dr. Frey tes fechado el 15 de junio de 2000. En el primero, el Dr. Valentín determinó que la Sra. Quiñones no padecía de alucinaciones ni delirios. Asimismo, el Dr. Freytes concluyó que, aunque la recurrente padecía de lentitud psicomotora, se manifestaba lógica, coherente y relevante y que no sufría de delirios, fobias, ideas suicidas ni homicidas. 
Hemos visto que la Sra. Quiñones renunció a la celebración de su vista evidenciaría. Por ende, su expediente administrativo carece no sólo del testimonio de ella, sino de cualquier otro tipo de prueba que reforzara su solicitud de una pensión no ocupacional. Así pues, no hallamos en el récord ante nos evidencia suficiente que nos mueva a resolver que las determinaciones de la Administración son arbitrarias o irrazonables.
Por otro lado, la Sra. Quiñones intima que por el hecho de que la Administración del Seguro Social federal le aprobó una pensión por incapacidad, la recurrida estaba obligada de alguna manera a hacer lo mismo. No tiene la razón.
Como mencionáramos, es norma reiterada por nuestro más Alto Foro que las determinaciones de la Administración del Seguro Social no obligan a la recurrente. Por ello, el hecho de que la Administración utilice los listados médicos de la citada Ley de Incapacidad del Seguro Social Federal no significa que tenga que aplicar el mismo estándar para otorgar o denegar una pensión.
En el caso ante nos, la Administración aplicó correctamente el estándar establecido por la Ley Núm. 447, a saber: si las condiciones de la Sra. Quiñones la incapacitan total y permanentemente para cumplir los deberes de cualquier cargo o empleo retribuido. Recordamos que le correspondía a la recurrente establecer que sus condiciones cumplían con el mencionado estándar. Al no hacerlo así, concluimos que la recurrente falló en *643 indicar qué evidencia consta en récord que sostenga que es acreedora de los beneficios de retiro por incapacidad no ocupacional. En consecuencia, resolvemos que la resolución recurrida está razonablemente sostenida por la prueba ante nos y nada en el recurso de epígrafe nos persuade a apartamos de la deferencia debida a la Administración.
IV
Por los fundamentos expuestos, se confirma la resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura el 11 de mayo de 2006 y notificada el 15 de junio de igual año.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 3
1. 3 L.P.R.A. § 769.
2. 3 L.P.R.A. § 770.
3. 3 L.P.R.A. § 771.
4. A los fines de determinar la incapacidad, el Reglamento 4930 incorporó por referencia los criterios médicos contenidos en el Apéndice 1 del Reglamento para la Determinación de Incapacidad utilizado para la concesión de los beneficios del Seguro Social. 20 C.F.R. § 404.1525. Dicho reglamento fue adoptado al tenor de las disposiciones del Título II de la Ley Federal del Seguro Social, 42 U.S.C.A. §§ 401-433.
5. Apéndice de la recurrente, pág. 178.
6. Apéndice de la recurrente, págs. 26-27.
7. Apéndice de la recurrente, pág. 31.